

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

AUG 2 8 2009

LAWRENCE K. BAERMAN, Clerk
UTICA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA

    v.

LESLIE KNOX,
        Defendant.

Criminal Action No.
5:07-CR-395 (DNH)

PLEA  AGREEMENT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

      ANDREW T. BAXTER, United States Attorney for the Northern District of New York (by Assistant United States Attorneys Stephen C. Green and Thomas A. Capezza) and defendant LESLIE KNOX (by Martin Klotz, Esq., Michael S. Schachter, Esq. and Joanna Rotgers, Esq.) hereby enter into the following Plea Agreement regarding the disposition of certain criminal charges against the Defendant:

      1.    **Defendant's Promises.**  In return for the consideration described below, defendant LESLIE KNOX agrees as follows:

          a.    The Defendant will withdraw his previous plea of "Not Guilty" and enter a plea of "Guilty" to Count Three of Indictment 07-CR-395, charging him with causing false financial reports and information to be filed with the U.S. Securities and Exchange Commission, in violation of 15 U.S.C. § 78m(a) and 78ff; Title 17, Code of Federal Regulations, Section 240.13a-1; and Title 18, U.S.C., Section 2.

2.    **Potential Penalties.**  LESLIE KNOX understands that his guilty plea to Count Three of the Indictment will subject him to the following potential penalties:

a.    <u>Maximum Term of Imprisonment</u>: 20 years.  (15 U.S.C. § 78ff)

b.    <u>Supervised Release</u>:  In addition to imposing any other penalty, the sentencing Court may require the Defendant to serve a term of supervised release of up to 3 years, to begin at the expiration of any term of imprisonment imposed upon him.  (18 U.S.C. § 3583)  Should the Defendant be placed on a term of supervised release and subsequently violate any of the terms and conditions of that release before the expiration of such term, he may be sentenced to up to 2 years imprisonment in addition to any prison term previously imposed upon him and in addition to the statutory maximum term of imprisonment set forth above.  Under some circumstances, the Court may also extend the term of supervised release, and it may modify, reduce, or enlarge the conditions of such release.

c.    <u>Maximum Fine</u>: $5,000,000.  (15 U.S.C. § 78ff)

d.    <u>Special Assessment</u>:  The Defendant will be required to pay an assessment of $100, which is due and payable at the time of sentencing.  (18 U.S.C. § 3013)  The Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court at the time of his sentencing.

e.    <u>Interest and Penalties</u>:  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the Defendant's sentence, from as early as the date of sentencing.

f.    <u>Collateral Consequences</u>:  Conviction of a felony may result in the loss of certain civil rights, including, but not limited to, the right to vote or the right to possess firearms.

2

3.    **Sentencing Factors.** LESLIE KNOX understands that the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum penalties and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by *United States v. Booker*, 543 U.S. 220 (2005). While the Court is not ultimately bound to impose a sentence within the applicable Sentencing Guidelines range, it must take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

4.    **Elements of the Offense.** LESLIE KNOX understands the following legal elements of the offense stated in the violation of Title 15, United States Code, Section 78ff and 78m(a); Title 17, Code of Federal Regulations, Section 240.13-1; and Title 18, United States Code, Section 2, charged in Count Three of the Indictment, and admits that those elements accurately describe his criminal conduct:

a.    First, that the defendant caused to be made false and misleading statements in financial reports required to be filed with the U.S. Securities and Exchange Commission ("the SEC"); and

b.    Second, that the false and misleading statements were material; and

c.    Third, that the defendant knowingly and willfully caused the false and misleading statements to be made.

5.    **Factual Basis for the Plea.** LESLIE KNOX admits the following facts, which establish his guilt with respect to the offense stated in Count Three of the Indictment:

a.    Defendant LESLIE KNOX was employed by The Penn Traffic Company ("Penn Traffic") as Senior Vice President of Merchandising in Syracuse beginning in or about May

3

of 1999. KNOX remained employed with Penn Traffic until his employment ceased in February 2006.

        b.      The Penn Traffic Company ("Penn Traffic") is a Delaware corporation with its headquarters and principal place of business in Syracuse, New York. Penn Traffic was, at all relevant times, a major food retailer in the Eastern United States, operating numerous supermarkets and a wholesale food distribution business serving over 100 licensed franchises and independent operators.

        c.      Penn Traffic was a publicly traded corporation at all times relevant to the Indictment.

        d.      Penn Traffic derived substantial revenue not only from the retail and wholesale sale of products, but also from payments made to it by vendors for promoting, displaying, advertising, and carrying their products. These payments were generally referred to as promotional allowances.

        e.      As a public company, Penn Traffic was required to comply with rules and regulations of the SEC. The SEC's rules and regulations were designed to protect members of the investing public by, among other things, requiring that a company's financial information be accurately recorded and disclosed to the SEC and the investing public. Penn Traffic's internal accounting policies concerning recognition of promotional allowances were consistent with Generally Accepted Accounting Principles.

        f.      Under the above-referenced laws and the SEC's rules and regulations, Penn Traffic and its officers were required to (a) make and keep books, records and accounts that, in reasonable detail, fairly and accurately reflected the company's business transactions, including its

4

revenue and expenses; (b) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurance that the company's transactions were recorded as necessary to permit preparation of financial statements in conformity with Generally Accepted Accounting Principles ("GAAP"); and (c) file with the SEC quarterly reports (on Form 10-Q) and annual reports (on Form 10-K), that included financial statements that accurately presented Penn Traffic's financial condition and the results of its business operations in accordance with GAAP.

g.      During Penn Traffic's fiscal year 2002, which ended February 2, 2002, defendant KNOX, with the assistance of colleagues and subordinates acting at his direction, caused to be submitted to Penn Traffic's accounting department deceptive and false financial information. This deceptive and false information caused allowances from vendors to be pulled from a future period and improperly recorded in a current period, prior to the time they were earned by Penn Traffic. Defendant KNOX received an increased bonus from Penn Traffic in the approximate amount of $13,725 as a result of this false financial information.

h.      On one occasion, one of Knox's direct reports advised that he was unable to achieve the target "without doing something goofy." Knox did not know exactly what he was proposing, but believed he was proposing to do something wrong to increase the allowances and discounts number. On another occasion, that direct report informed Knox that he had "tak[en] November rebates and appl[ied] them to October." Knox did not inquire about the specifics of that action, but believed it was wrong. Knox knew that the effect of the conduct described above would be to make the Company's performance as reflected in its financial statements appear better than it was, and that the financial statements would be included in reports to the SEC and distributed to investors in Penn Traffic securities.

i.    In truth, Penn Traffic's actual financial status was not what was reported on its internal and external financial statements during this period. Rather, pulling forward activity caused Penn Traffic to falsely report earnings and pre-tax operating income to investors and the SEC during fiscal year 2002. As a result of the conduct of the defendant, Penn Traffic's accounting department was caused to make misrepresentations and omissions of material fact in its required public filings with the SEC that were relied upon by members of the investing public.

j.    In or about May and September 2002, within the Northern District of New York and elsewhere, the defendant with others did unlawfully, willfully, and knowingly, cause to be made statements in reports and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, specifically, Form 10-K and 10-K-A for the Penn Traffic Company for the fiscal year ended February 2, 2002, filed on May 3, 2002, as amended by the filing of September 18, 2002. The defendant knew and understood that his conduct would cause the company to make materially false and misleading statements that would be relied upon by the SEC, shareholders, creditors and the investing public.

k.    The parties incorporate by reference, as further factual admissions by the Defendant, the stipulations as to sentencing factors and issues set forth below.

l.    The Defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the Defendant or stipulated by the parties. In making those findings by a preponderance of the

evidence, the Court may consider any reliable evidence, including hearsay. The Defendant agrees that his sentence may be determined based upon such judicial fact-finding.

6.    **Use of Defendant's Admissions.**  The Defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth above, shall be admissible and useable against the Defendant by the United States in any subsequent criminal or civil proceeding, even if he fails to enter a guilty plea pursuant to this Agreement, or if such a guilty plea is later vacated or withdrawn. The Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

7.    **Government's Promises and Reservation of Rights.**  In exchange for the plea of guilty to Count Three of the Indictment by LESLIE KNOX and his continuing compliance with all of the terms of this Plea Agreement, the United States Attorney's Office for the Northern District of New York agrees as follows:

a.    At the time of sentencing, it will move to dismiss the remaining charges against the Defendant in Indictment 07-CR-395 for so long as the guilty plea and sentence on Count Three of the Indictment remain in effect.

b.    It will bring no further federal criminal charges against the Defendant relating to the conduct in the Northern District of New York committed before the date of this Agreement, which is described in the Indictment and the Defendant's admissions above for so long as the guilty plea and sentence on Count Three of the Indictment remain in effect.

c.    If the guilty plea to Count Three of the Indictment is later withdrawn or vacated, the charges dismissed or not prosecuted pursuant to subparagraphs 6a and 6b of this

7

Agreement may be filed and prosecuted, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the filing of any such charges. The Defendant waives any defense or objection to the filing and prosecution of any such charges that are not time-barred by the applicable statute of limitations as of the date of this Agreement.

       d.    It reserves the right to present to the Court all other information in its possession relevant to the Court's determination of an appropriate sentence, including but not limited to (i) the government's estimate of the overstatement of Penn Traffic's financial results caused by the defendant's and co-defendant's fraud and deception and (ii) the amount of money The Penn Traffic Company has paid as a result of the defendant's and co-defendant's misconduct. The government, however, has agreed with the defendant that these amounts do not constitute a "loss" for purposes of calculating the defendant's Guideline offense level.

       e.    The U.S. Attorney's Office and the defendant reserve the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within Count Three of the Indictment.

    8.   **Stipulations**. The U.S. Attorney's Office and LESLIE KNOX agree to stipulate at sentencing to the statements set forth in subparagraph a below, subject to the caveats set forth in the subparagraphs following:

       a.    Stipulations

       i.    The offense level for Count Three of the Indictment, causing false and misleading reports and financial information to be filed with the SEC, is governed by U.S.S.G. § 2B1.1. The base offense level for Count Three is 6, pursuant to U.S.S.G. § 2B1.1.

8

          ii.     Section 2B1.1(b) provides Specific Offense Characteristics for dollar value losses caused by a defendant sentenced under § 2B1.1. Here, defendant acknowledges that he obtained an enhanced bonus in the approximate amount of $13,725 as a result of the conduct charged in Count Three of the Indictment. Accordingly, the offense level is increased by four levels, to a total of 10.

          iii.     The U.S. Attorney's Office will recommend a 2-level downward adjustment to the applicable Sentencing Guidelines range if, (A) through the time of sentencing, the Defendant clearly demonstrates "acceptance of responsibility" to the satisfaction of the Government for the offense of conviction, as defined in U.S.S.G. § 3E1.1(a); and (B) the Government does not learn of new evidence of conduct committed by the Defendant, either before or after his guilty plea, that constitutes "obstruction of justice," as defined in U.S.S.G. § 3C1.1.

          b.     Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the Defendant's Criminal History Category and, in some cases, his total offense level.

          c.     It is understood that these stipulations cannot and do not bind the sentencing Court, which may make independent factual findings by a preponderance of the evidence and may reject any or all stipulations between the parties. The rejection of any or all stipulations by the Court will not be the basis for the withdrawal of a plea of guilty by the Defendant, and will not release either the U.S. Attorney's Office or the Defendant from any other portion of this Agreement, including any other stipulations agreed to herein.

          d.     No stipulation in this Agreement shall affect the parties' respective obligations to ensure that, to the extent possible, the Court has all information pertinent to its

determination of an appropriate sentence. The parties may provide any such factual information to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report, and agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this Agreement.

        c.    To the extent the stipulations above do not reflect agreement on any factor or issue potentially affecting the applicable advisory Sentencing Guidelines range, the Defendant and the U.S. Attorney's Office each expressly reserves the right to advocate if, and how, any such factor or issue would apply under the Sentencing Guidelines.

    9.    **Limitations on Agreement.** This Agreement is limited to the U.S. Attorney's Office for the Northern District of New York and cannot bind other federal, state or local prosecuting authorities. Furthermore, this Agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the Defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability.

    10.    **Agreement Not Binding on the Court.** The Court is neither a party to, nor bound by this Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the U.S. Probation Office.

        a.    The Court is not bound by any recommendation, stipulation, or request made by the parties, pursuant to Fed. R. Crim. P. 11(c)(1)(B), as to the appropriate sentence, and the Defendant may not withdraw his plea of guilty if the Court declines to follow any such recommendation, stipulation, or request. The U.S. Attorney's Office reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make

10

with regard to the Defendant's sentence, whether or not such decision is consistent with this Office's recommendations, stipulations, or requests.

11.   **Waiver of Defendant's Rights.**  The Defendant acknowledges that he has read each of the provisions of the entire Plea Agreement with the assistance of counsel and understands its provisions.  The Defendant further acknowledges that his plea is voluntary and did not result from any force, threat, or promises (other than the promises in this Plea Agreement).

a.   The Defendant understands his right to assistance of counsel at every stage of the proceeding and has discussed his constitutional and other rights with defense counsel.  The Defendant understands that by entering a plea of guilty, he will be giving up his rights (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present evidence in his defense; and (vi) to remain silent and refuse to be a witness against himself by asserting the privilege against self-incrimination.

b.   The Defendant has been advised by defense counsel of the nature of the charges to which he is entering a guilty plea and the nature and range of the possible sentence.  The Defendant understands the sentencing Court's obligation to consider the United States Sentencing Guidelines (as explained further above) and the Court's discretion to depart from those Guidelines under some circumstances or otherwise to impose a reasonable sentence outside of the applicable Sentencing Guidelines range.

12.   **Memorialization of Agreement.**  No promises, agreements or conditions other than those set forth in this Agreement will be effective unless memorialized in writing and signed by all

11

parties or confirmed on the record before the Court.  This Agreement, to become effective, must be signed by all of the parties listed below.

ANDREW T. BAXTER
United States Attorney
Northern District of New York

Dated: _____, 2009                By: _____

Stephen C. Green
Thomas A. Capezza
Assistant U.S. Attorneys
Bar Roll Nos. 507767 & 503159

Dated: _____, 2009                _____

LESLIE KNOX
Defendant

Dated: _____, 2009                _____

Martin Klotz, Esq.
Michael S. Schachter, Esq.
Joanna Rotgers, Esq.
Attorneys for Defendant
Bar Roll Nos. 509489, 514762 & 514763

12